UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL J. MCDANIELS,

       Plaintiff,

v.                                                    Case No. 3:23-cv-1120-MMH-PDB

RICKY D. DIXON, et al.,

       Defendants.

_____

### **ORDER**

### **I. Status**

Plaintiff Michael J. McDaniels, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] on September 19, 2023.[2] In the Complaint, McDaniels presents claims pursuant to 42 U.S.C. § 1983 against six Defendants: FDOC Secretary Ricky D. Dixon; Florida State Prison (FSP) Assistant Warden Jeffery McClellan; Julie Beighley;[3] Alberto Bayron; Scott

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[3] McDaniels referred to this Defendant as "Beasley" throughout the Complaint, but after service of process, the Court granted McDaniels' motion to correct this Defendant's name to "Julie Beighley." See Order (Doc. 28).

Jenkins; and Eric Mitchell Howard.[4] Complaint at 2-3; <u>see also</u> Doc. 10. McDaniels, a transgender inmate, asserts violations of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA) stemming from her placement on property restriction, the conditions of her disciplinary confinement, and the denial of hormone therapy, psychotherapy, and feminine undergarments. <u>See</u> Complaint at 1, 5-10. As relief, McDaniels seeks declaratory relief, injunctive relief, and monetary damages. <u>Id.</u> at 10-11.

This matter is before the Court on Defendants Dixon and McClellan's Motion to Dismiss (Doc. 31; Dixon and McClellan Motion) and Defendants Beighley, Bayron, Jenkins, and Howard's (collectively FSP Officers) Motion to Dismiss with Incorporated Memorandum of Law (Doc. 32; FSP Officers' Motion) (collectively, Motions). Defendants submitted exhibits in support of their respective Motions. <u>See</u> Docs. 31-1 to 31-5; Docs. 32-1 to 32-3. McDaniels filed a joint response in opposition to the Motions. <u>See</u> "Plaintiff response to defendants motions to Dismiss" (Doc. 42; Response). McDaniels also submitted exhibits in support of the Response. <u>See</u> Doc. 43. At the parties' request, the Court granted Defendants Dixon and McClellan leave to file a reply and McDaniels leave to file a sur-reply. <u>See</u> Docs. 45, 54.

---

[4] McDaniels sues Defendant Dixon in his official capacity, Defendant McClellan in his official and individual capacities, and the remaining four Defendants in their individual capacities. <u>See</u> Complaint at 2-3.

Defendants Dixon and McClellan filed their reply (Doc. 47; Reply) with an exhibit (Doc. 47-1), and McDaniels filed her sur-reply. <u>See</u> "Plaintiff's motion for leave to reply to Defendant amended response to Plaintiff's response to an motion to dismiss" (Doc. 55; Sur-reply). Thus, Defendants' Motions to Dismiss are now ripe for review.

Also before the Court is McDaniels' "Motion to [I]mpeach [W]itness" (Doc. 41; McDaniels' Motion). Defendants Dixon and McClellan filed a response in opposition to McDaniels' Motion (Doc. 48; Dixon and McClellan Response). McDaniels' Motion is also ripe for review.

## II. McDaniels' Allegations[5]

McDaniels alleges that she is a transgender inmate diagnosed with gender dysphoria, which she maintains is a serious medical need. <u>See</u> Complaint at 4, 8-9. At the time she filed her Complaint, McDaniels was

---

[5] In considering the Motions, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to McDaniels, and accept all reasonable inferences that can be drawn from such allegations. <u>Holland v. Carnival Corp.</u>, 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

The Court notes that McDaniels included a "Statement of Facts" section in her Response that contains several factual allegations that are not present in the Complaint. <u>See</u> Response at 2-3. At the motion to dismiss stage, the Court is limited to analyzing the allegations in the Complaint to determine if McDaniels has properly stated a claim. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" <u>Dorman v. Aronofsky</u>, 36 F.4th 1306, 1317 (11th Cir. 2022) (quoting <u>EEOC v. Catastrophe Mgmt. Sols.</u>, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016)). Moreover, McDaniels may not amend her Complaint in a response to a motion to dismiss. <u>See</u> Fed. R. Civ. P. 7(b).

housed at FSP in Close Management (CM) III status.[6] Id. at 2, 4. As to the specific facts giving rise to her claims, McDaniels alleges that on March 31, 2023, Defendant Howard "sprayed [her] with chemical agents in response to an assault." Id. She alleges prison officials then escorted her to a disciplinary confinement wing and placed her on "property restriction, i.e., strip." Id. at 5. After she removed her clothing, McDaniels alleges Defendants Beighley and Bayron denied her request for feminine undergarments and instead forced her to wear male boxer shorts. Id. at 4-5. According to McDaniels, Defendants Beighley and Bayron denied her request despite being aware of her transgender status and a FDOC procedural rule that permits transgender inmates with a diagnosis of gender dysphoria to wear opposite gender undergarments. Id. at 7.

During the time period she was on property restriction, McDaniels alleges prison officials "denied all of her feminine clothing, hygienic items, and other personal property" and forced her to "sleep on a steel bunk in nothing but a pair of male issued boxer shorts." Id. at 6. After she completed disciplinary confinement, McDaniels asserts that prison officials failed to return her transgender approved clothing to her. Id. at 5. In addition, she alleges that Defendants Beighley, Bayron, McClellan, and Dixon

---

[6] McDaniels is presently housed at Suwannee Correctional Institution. See Corrections Offender Network, Florida Department of Corrections, available at https://fdc.myflorida.com/OffenderSearch/Search.aspx.

discontinued her hormone therapy for thirty days after she completed disciplinary confinement. Id. at 5, 7-8. And McDaniels asserts Defendants denied her psychotherapy with "a professional experienced in treating gender identity disorder." Id. at 9.

Based on these facts, McDaniels asserts Eighth Amendment claims arising from her placement on property restriction, the conditions of disciplinary confinement, and the denial of hormone therapy, psychotherapy, and feminine undergarments. Id. at 5-9. McDaniels also asserts that Defendants Beighley, Bayron, McClellan, and Dixon violated her rights under the ADA when they denied her hormone therapy, psychotherapy, and feminine undergarments. Id. at 10. Finally, McDaniels appears to assert a Fourteenth Amendment equal protection claim and a RA claim. Id. at 1.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Iqbal, 556 U.S. at 678; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed,

while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see</u> <u>also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

6

face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

## IV. Summary of the Arguments

### A. Defendants' Motions to Dismiss

The FSP Officers seek dismissal of McDaniels' claims against them on the basis that: (1) McDaniels failed to exhaust her administrative remedies; (2) the Complaint is a shotgun pleading; and (3) they are entitled to qualified immunity. See FSP Officers' Motion at 3-17. Defendants Dixon and McClellan argue that the Court should dismiss McDaniels' claims against them because: (1) McDaniels did not exhaust her administrative remedies; (2) McDaniels fails to state a plausible claim of deliberate indifference to a serious medical need; (3) as supervisory officials, they are not liable under § 1983 on the basis of respondeat superior or vicarious liability; (4) McDaniels fails to state a claim for relief under the ADA; (5) they are entitled to

Eleventh Amendment immunity to the extent they are sued in their official capacities; (6) Defendant McClellan is entitled to qualified immunity; and (7) McDaniels is not entitled to the relief she seeks. <u>See</u> Dixon and McClellan Motion at 6-33.

In her Response, McDaniels argues that she properly exhausted administrative remedies, that she states plausible claims for relief, and that Defendants Dixon and McClellan can be held liable on the basis of respondeat superior and/or supervisory liability. <u>See</u> Response at 1-11. In their Reply, Defendants Dixon and McClellan maintain that McDaniels presents additional factual allegations and claims in her Response that are not contained in the Complaint. <u>See</u> Reply at 1-4. Defendants Dixon and McClellan argue the Court cannot consider these additional allegations and claims at the motion-to-dismiss stage. <u>Id.</u> Defendants Dixon and McClellan also argue that the grievance records McDaniels submitted with her Response do not satisfy the exhaustion requirement. <u>Id.</u> at 3-4. In her Sur-reply, McDaniels reasserts that she exhausted her claims and that she has raised plausible claims for relief. <u>Id.</u> at 3-5.

### B. McDaniels' Motion

In her motion, McDaniels asks the Court to impeach Jacqueline Spanios, a correctional officer at Suwannee Correctional Institution, who provided a declaration in support of Defendants Dixon and McClellan's

argument that McDaniels failed to exhaust her administrative remedies. <u>See</u> Doc. 31-1 (Spanios Declaration). Defendants Dixon and McClellan argue in response that McDaniels has not presented any valid basis for striking the Spanios Declaration. <u>See</u> Dixon and McClellan Response at 2-6.

### V. Analysis

### A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[7] (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). While

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the Eleventh Circuit does not appear to have addressed the applicability of the PLRA to suits brought under the ADA or the RA, the language of § 1997e(a) is not limited to § 1983 claims, but also applies to challenges to prison conditions brought under other "Federal law[s]." 42 U.S.C. § 1997e(a). Notably, several courts that have considered the reach of the PLRA have concluded that its exhaustion requirement must be satisfied before a prisoner can pursue an ADA claim, such as the one asserted here by McDaniels, in federal court. Green v. Thomson, No. 1:20-cv-19 (LAG), 2021 WL 7967925, at *5 (M.D. Ga. Sept. 9, 2021), report and recommendation adopted, No. 1:20-cv-19 (LAG) (TQL), 2022 WL 1042915 (M.D. Ga. Feb. 28, 2022) (collecting cases).[8] Because the reasoning of these courts applies equally to claims under the RA and the Court finds the reasoning persuasive, the Court applies the PLRA exhaustion requirement to all of McDaniels' claims.

A prisoner such as McDaniels, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits"

---

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[9] 286 F.3d, at 1024 (emphasis in original).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23

---

[9] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

(11th Cir. 2007)). In Ross, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants Dixon, McClellan, and the FSP Officers bear "the burden of proving that [McDaniels] has failed to exhaust [her] available administrative remedies." Turner, 541 F.3d at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district

> courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, as exhibits to her Response, McDaniels submitted her grievance records, her "approved passes" for gender dysphoria treatment, as well as excerpts from FDOC Procedure 403.012 covering "Identification and Management of Inmates Diagnosed with Gender Dysphoria." See Doc. 43. The FSP Officers submitted a grievance log and copies of McDaniels' grievance appeals with their Motion. See Docs. 32-1 to 32-3. Likewise, Defendants Dixon and McClellan submitted declarations, grievance logs, and grievance records with their Motion. See Docs. 38-1 to 38-2. With the exception of the Spanios Declaration, the parties do not dispute the accuracy

13

of the above record evidence, nor request an evidentiary hearing. <u>Bryant</u>, 530 F.3d at 1377 n.16. Thus, the Court considers the record evidence solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether McDaniels has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see</u> <u>also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the

inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). For instance, an inmate may skip the informal grievance stage and file a formal grievance for medical issues or to allege an ADA violation. See id. An inmate can also completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). If an inmate is permitted to bypass the informal grievance stage and begin with a formal grievance at the institutional level, the formal grievance must be received no later than fifteen days from the date on which the incident or action being

15

grieved occurred. Id. Grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. The Spanios Declaration

McDaniels argues the Court should strike the Spanios Declaration for two reasons, neither of which the Court finds persuasive. First, McDaniels

16

argues that Spanios lacks personal knowledge of McDaniels' grievances because McDaniels submitted her grievances at FSP and Spanios is employed at Suwannee Correctional Institution. <u>See</u> McDaniels' Motion at 1. Spanios' access to grievance records, however, is not as limited as McDaniels suggests. As Spanios states, she had access to McDaniels' grievance records stored in FDOC's Central database when she prepared her Declaration. <u>See</u> Spanios Declaration at 1.

Second, McDaniels argues that the statements in the Spanios Declaration are inconsistent with the Declaration of FDOC Operation Analyst Lawanda Sanders (Doc. 31-4; Sanders Declaration), which Defendants Dixon and McClellan also submitted in support of their exhaustion argument. In the Spanios Declaration, Spanios states in relevant part:

> 1.    At the request of the Florida Office of the Attorney General, I have reviewed the available grievance records stored in the FDC's Central database and that of Suwanee Correctional Institution for inmate Michael J. McDaniels, DC# T43936, for grievances filed between March 31, 2023 to September 22, 2023.

> 2.    During that period, inmate McDaniels did not receive any approved informal or formal grievances related to deliberate indifference or ADA violations.

<u>See</u> Spanios Declaration at 1. Based on her review of McDaniels' grievance records from March 31, 2023 to September 19, 2023, Sanders states in her

declaration that FDOC's Bureau of Policy Management and Inmate Appeals

received three appeals from McDaniels during the relevant time period,

> two of which were returned, and one was denied. The
> two returned without action appeals pertained to
> clothing and undergarments, and the denied appeal
> pertained to various missing personal property.

See Sanders Declaration at 1. The Court finds no inconsistency between the

two Declarations as the Spanios Declaration concerns informal and formal

grievances whereas the Sanders Declaration is limited solely to grievance

appeals. As such, McDaniels' Motion is due to be denied.

### 4. McDaniels' Exhaustion Efforts

The grievance logs submitted by Defendants show that McDaniels filed

twenty-nine informal grievances, eight formal grievances, and three

grievance appeals between March 31, 2023, the date she entered disciplinary

confinement, and September 19, 2023, the date she gave her Complaint to

prison officials for filing. See Docs. 31-2, 32-1. In support of their argument

that McDaniels failed to properly exhaust her administrative remedies prior

to filing this lawsuit, Defendants Dixon, McClellan, and the FSP Officers

provided the following grievance records with their respective Motions:[10]

---

[10] The FSP Officers submitted redacted versions of McDaniels' grievances.
See generally Docs. 32-1 to 32-3. Because the other parties submitted unredacted
copies, the Court reviewed both versions. In doing so, the Court observed that the
FSP Officers redacted words and/or phrases – such as "bra" and "Gender Dyshoria
[sic] items are missing" – that appear to be relevant to the issues raised in this

**a. Formal Grievance (log #2307-205-067)**

On July 10, 2023, McDaniels submitted a formal grievance (log #2307-205-067) to FSP:

> My right[s] have been violated and it's cruel and unusual punishment due to the Department of Corrections per me being an approved Gender Dyshoria [sic] inmate. I was approved by the head of mental health in Tallahasse[e.] [T]he Gender Dyshoria [sic] Review Team approved me for hormones and I've been recieving [sic] them up until my last month but there [are] girls (Transgenders) recieving [sic] treatment and I am a transexual from the streets and have surgical procedure to match my gender choice[.] [T]his is an act to stop my transaction [sic] or neglect my mental health needs. I have been an approved ADA member due to my mental state per gender Dyshoria [sic].
>
> Administrative Remedy Seeking:
> To have the institution comply with treatment per D.O.C. procedure number 403.012 hormone treatment for approved members of gender Dyshoria [sic]. Haven't had my Estrogen [p]er my DC4-643[.] [I]t list[s] hormones as my treatment.

Doc. 31-3 at 2. On July 14, 2023, FSP denied the formal grievance, stating in pertinent part:

> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed. Your medical team at FSP are doing everything in their power with the issues presented to provide you with quality [] health care. At this time you may not agree

lawsuit. It is unclear whether the redactions were inadvertent, but in any event, the Court cautions counsel to be cognizant of their duty of candor to the Court.

with the plan in place and you have the right to
refuse all treatments offered, but negligence is not
identified. If you are having [concerns] that cannot
wait, sick call form for medical or mental health is
available per FDOC policy. Record review states you
were seen 7/12/2023 by onsite provider for all your
GD treatments and medi[c]ation.

GRIEVANCE IS HEREBY DENIED.

You may obtain further administrative review of your
complaint by obtaining form DC1-303, Request for
Administrative Remedy or Appeal, completing the
form, providing attachments as required by
paragraphs 33-103.007(3)(a) and (b), F.A.C., and
forwarding your complaint to the Bureau of Policy
Management and Inmate Appeals, 501 South
Calhoun Street, Tallahassee, Florida 32399-2500.

Doc. 31-3 at 1.

## b. Informal Grievance (log #205-2306-0113) and Formal Grievance (log #2306-205-111)

On June 4, 2023, McDaniels submitted an informal grievance (log #205-
2306-0113) to FSP in which she stated:

I haven't been able to attended [sic] my Gender
Dyshoria [sic] treatment & have been refused my bra
and panties which are a[ ]part of the mental health
treatment of Gender Dyshoria [sic] & the Doctor is
aware I'm approved and on Friday no one came to my
door to pull me for group claiming they aint [sic] have
enough space to alot [sic] the Gender Dyshoria [sic] to
attend the classes[.] [I]t not enough seating for
ever[y] Gender Dyshoria inmate to attend[.] [T]here
needs to be an administrative [r]emedy[.] I wish to
have increased counseling of go in front of the review
board to be placed on meds[.] I been very depressed
due to the cruel and unusually punishment: I

> enduring facial hair, (not being able to shave), [n]o [b]ra for surport [sic] & lack of going to group this past Wednesday and Friday. I wasn't pulled for group. I feel a hardship and I have suicidal thought on record and depression & anxiety also. I need help June 01, 2023 group nobody came to my door nor have you made rounds. I see you sign the log but never walked around. I'm an ADA inmate.

Doc. 31-3 at 5. On June 8, 2023, FSP denied the informal grievance, stating in pertinent part:

> Documents show you attended group on 5-26-23 and refused on 6-2-23. In addition you saw your assigned clinician on 6-5-23 with no report of complaints currently on this informal grievance.

Id. McDaniels then submitted a formal grievance (log #2306-205-111) on June 11, 2023, in which she stated:

> Due to the issues being repetitive and my need haven't been meet [sic] on June 09, 2023 approx 8:30 – 10:30 am during the time they pulled group they never came to my door. This [is] apart [sic] of my treatment per DOC Procedure number 403.012(5)(a)[.] [T]here's been an deliberate acts of indifferen[ce] because Doctor E is aware of the fact after my suicide attempt due to the extreme depression and stress and anxiety for the lack of Clinical Group Therapy and Psychoeducational Group Intervention due to fraud and falsification of official documents after the respon[se] from Grievance (informal) log #205-2306-0113 which is attached. On 06/09/23 Doctor E himself came to me in the 2nd floor showers & advised them to take me to group. Even during my individual [p]sychotherapy I advise my cou[n]sel Mr. Cobo of the promblems [sic] for the last 2-months. I also have an ADA accommodation[] recorded on (DC4-691) for Mental

21

defit [sic] per mental health evap for my gender dyshoria [sic] and (DC4-643)[.] [M]y accomations [sic] haven't been met. Upon being cou[n]seled by Dr. E after my suicide attempt he advised that he will increase my individual [p]syc[h]otherapy and make sure I attend my two group session[s] on Friday.

Administrative Remedy Seeking:
To be issued all my approved accommodations for Gender Dyshoria [sic] and alotted [sic] the chance to go to my weekly groups and to be placed on the list to see MDST about asse[ss]ment to my treatment mental health needs and to have everything meet on my DC4-643 form.

Doc. 31-3 at 4.

On June 30, 2023, FSP denied the formal grievance, stating in relevant

part:

A review of your record shows that you are being offered mental health services consistent with your S-grade and Close Management status. Per your Individualized Treatment Plan, you are being offered 1:1 psychotherapy monthly, weekly mental health group, and two weekly Gender Dysphoria groups. Your record indicates that you attended your 1:1 psychotherapy session on 06/05/2023 and that you refused weekly CM group on 06/09/2023, but then attended both Gender Dysphoria groups on 06/09/2023 and 06/16/2023. Please, refer to your counselor to review your Individualized Treatment Plan. You are encouraged to continue engaging in mental health services and institutional programs to better address your reported mental health symptoms.

GRIEVANCE IS HEREBY DENIED.

> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

Doc. 31-3 at 3.

### c. Informal Grievance (log #205-2306-0478), Formal Grievance (log #2306-205-232), and Grievance Appeal (log #23-6-22411)

On June 15, 2023, McDaniels submitted an informal grievance (log #205-2306-0478) to FSP, stating in pertinent part:

> (On 06/06/23) LT of C-Wing went to get my property because my D/C time was finally up[.] [U]pon recieving [sic] my property there was [sic] numerous items missing. I even listed on the DC6-220 that my shoes where [sic] missing. Headphone & my ordered dry fit shirt which is all listed on your records. And the [b]ra FSP issued me are missing[.] [I]f you do an investagation [sic] on my (DC6-220) you will see that one officer inventoried my property on 4/10/23 they signed and date but the witnessing officer signed on 4/13/23 as a witness officer when I wasn't present. This isn't right my property was not handled properly & I wish to be compensated or refunded for the items missing as a means to an [a]dministrative remedy. I don't have shoe for rec need this fixed as soon as possible.

Doc. 31-5 at 6. On June 22, 2023, FSP denied the informal grievance, stating in its response:

> Your most recent DC6-220 will show storage location box 0906 for your boots and earbuds from 4/10/23.

> Further review shows you signed for all other items
> on 4/20/22 there has been no record of the dry-fit
> shirt or shoes since the 4/20/22 DC6-220.

Id. McDaniels then submitted a formal grievance (log #2306-205-232) on June

20, 2023, in which she stated:

> This is a formal appeal to my informal grievance 205-
> 2306-0478. I recieved [sic] my property once I was
> released of[f] D/C status (on 06-06-23). Upon
> recieving [sic] my property that there was [sic]
> numerous missing items. I even wrote on the DC6-
> 220 of my missing property. I have proff [sic] of the
> items I gave to Sgt. Tallick see attacthed [sic] DC6-
> 220 my initial upon arrival and the inventory
> afterwards. Per procedure 602.018 = My property was
> damage or destroyed by department staff. (5)(3)
> "whether there was any violation of Department
> rules or procedures by staff."

> Statement of facts:
> I was taken to A/C confinement from cell front on
> camera per use of force on (03/31/23 removed from I-
> wing 1307) Taken to B-wing 11 my property never
> followed I was placed on strip all my property was
> stored. Upon going on D/C status I wasn't allowed my
> property. Once I completed my D/C time on 06/06/23 I
> recieved [sic] all my property and finally got my DC6-
> 220. I did an investigation & it was a clear rule and
> procedure violation. I was removed from my cell on
> (03/31/23 on CM III I-wing 1307)[.] [M]y property
> wasn't inventoried or document until (4/10/23) and
> witnessing officer signed on (4/13/23) the DC6-220
> which is attacthed [sic] as well. Also I've provide[d]
> my DC6-220 when I first arrived at FSP on 04/1/22.
> Attached is (2)DC6-220/Informal grievance log #205-
> 2306-0478.

> Items missing: Shoe corp shoes 1 pr / T-shirt (1) /
> Headphones 1/ Canteen bags 3/ Eyeglass case 1/

> earbuds 1/ Lusty hair food 2/ Baby lotion 2/ Cocoa
> butter lotion 1/ Baby powder 4/ Magic Shave 5/
> Infusion lotion 1/ Noxema 1/ Combo lock 1/ Medical
> socks 1/ Mirror 1/ JPlo Tablet / Religious Bag / Hard
> glass case 1/ Makeup and Makeup Bag 1/ All isn't
> listed per policy and procedure 602.018(4)(b). All
> property confiscated during a search/inspection will
> be listed on an Inmate Impounded Property list
> "DC6-220[.]" [T]he employee's must sign as well as
> inmate. My property was left not secured or
> preserved from 3/31/23 to 4/10/23 which is 10 day[s]
> before being accounted for[.] [I]t clearly went missing
> or was destroyed or damaged before then[.] [A]ll
> item[s] can be seen on my use of force video from DR
> log #205-230817 at 00.45 hrs on 3/31/23.

Doc. 31-5 at 5. On July 6, 2023, FSP denied the formal grievance, stating in

pertinent part:

> Your request for Administrative Remedy or Appeal
> has been received, reviewed and evaluated. Further
> investigation reveals the following information: The
> response that you received to the attached informal
> grievance 205-2306-0478 is found to adequately
> address your issue.
>
> Therefore, based on the foregoing information: your
> grievance is denied.
>
> You may obtain further administrative review of your
> complaint by obtaining form DC 1-303, Request for
> Administrative Remedy or Appeal, completing the
> form, providing attachments as required by
> paragraphs 33-103.007(3)(a) and (b), F. A. C., and
> forwarding your complaint to the Bureau of Policy
> Management and Inmate Appeals, 501 South
> Calhoun Street, Tallahassee, Florida 32399-2500.

Doc. 31-5 at 3.

McDaniels subsequently submitted a grievance appeal (log #23-6-22411), dated July 10, 2023, to the Office of the FDOC Secretary in which she stated:

> Violation 602.018(4)(b) My property wasn't inventoried the day staff put me on handheld camera on 3/31/23 at 00:45 hours. Per DR log #205-230817 I was placed in confinement wing removed on audio and video from I-wing cell (1301) [t]aken to Bwing (1124)[.] [M]y property never followed because I was placed on an illegal strip. Upon receiving D/C time of 60 days upon completion[,] I was allowed to recieve [sic] all my property & numerous items was [sic] missing and the institution is liable[.] [M]y original property form is attacthed [sic] which I had upon my arrival at Florida State Prison on 04/1/22. I haven't left CM or anything[.] [H]ow is it my item[s] are missing that I not allowed to have missing also that was suppose[d] to be stored[.] [M]y boots is accounted for but my all white shoe corps shoe is missing. I went to confinement per use of force DRH 205-230817 at 00.45 on 03/31/23[.] My property wasn't inventoried until 04/10/23[.] [T]hat 10 days later that my property was left unsecured and a violation of my right and policy procedure 602.018(5)(B) whether there was any violation of [D]epartment rules of procedure by staff.
>
> Administrative Remedy seeking:
> To properly investigate the date and time of event. [A]ttacthed [sic] are my original DC6-220 before I went to confinement & the new one after I got out of D/C confinement[.] DC6-220 ar[e] attached as evidents [sic] of my property so you can see even stored item[s] are missing[.] I'm not allowed on CM is missing even my Gender Dyshoria [sic] items are missing also how is it possible when there [sic] surpose [sic] to be stored there some not right here clearly.

Doc. 31-5 at 2. On July 27, 2023, the Office of the FDOC Secretary provided

the following response:

> Your administrative appeal has been reviewed and
> evaluated. The response that you received at the
> institutional level has been reviewed and is found to
> appropriately address the concerns that you raised at
> the institutional level as well as the Central Office
> level.
>
> You need to write an inmate request to medical
> concerning your bra.
>
> Your administrative appeal is denied.

Doc. 31-5 at 1.

Turning to the evidence McDaniels submitted with her Response,

McDaniels argues she exhausted her administrative remedies based on the

series of grievances which are quoted below:

### d. Informal Grievance (log #205-2305-0263), Formal Grievance (log #2305-205-182) and Grievance Appeal (log #23-6-18324)

On May 8, 2023, McDaniels submitted an informal grievance (log #205-

2305-0263) to FSP in which she stated:

> I'm an approved Gender Dyshoria [sic] inmate and I
> was place[d] on A/C confinement on strip and my
> Panties and Bra in accordance with procedure
> 403.012(5)(a)4. Issue opposite gender inmate uniform
> and undergarment. Inmates will be issued the
> approved type, but may purchase other types of
> under garment independently from either the
> alternate canteen or quaterly [sic] menu. Which I'm
> not offered the chance to order[.]

27

> Administrative Remedy seeking: I've been forced since 3/31/23 to not have my female undergarment & not have a bra for surport [sic] of my breast which are affecting my growth & development of my breast tissue[.] I seek to have these item[s] giving [sic] to me within 30 days of response. Bra size 32B Panties 7/8.

See Doc. 43 at 17. On May 12, 2023, FSP approved the informal grievance, responding:

> New undergarments will be issued. You are not afforded [the] opportunity to order them because you are on CM. There is a separate canteen form for GD inmates who are on CM. There is only one item on the list which is a hair brush.

Id. On May 24, 2023, McDaniels submitted a formal grievance (log #2305-205-182) to FSP in which she stated:

> (Formal Grievance) – Issue – I've wrote an informal grievance 205-2305-0263 about this issue and my Administrative Remedy I'm seeking still hasn't been meet [sic]. I've been deprived of medical and mental [h]ealth treatment which is a D.O.C. procedure violation as well as a direct violation of my civil [r]ights as well as constitutional rights.
>
> Statement of facts:
> I'm an approved Gender Dyshoria [sic] inmate[.] I was placed on A/C confinement on strip and my Panties and Bra's in accordance with procedure 403.012(5)(A)(4). Issue opposite gender inmate uniform and undergarment. Inmates will be issued the approved type, but may purchase other types of undergarments [i]ndependently from either the alternate canteen or quaterly [sic] menu. Which I'm not offered the chance to order my administrative [r]emedy I seek on my informal grievance log #205-

28

> 2305-0263 was since being forced since 03/31/23 to not have my female undergarment & not have a bra for surport [sic] of my breast which are affecting my growth and development of my breast tissue. I seeked [sic] to have these items giving [sic] to me with 30 days of your response. Responds 05/12/23 Bra size 32B Panties: 7/8.
>
> New administrative [r]emedy seeking:
> To have my body examined because my breast[s] have fell [sic] and are not developing properly and you can see the different [sic] seeking medically fixed or to be compensated for the damages and to have a bra given to me within 30 days which has passed and I wish to have a surgical remedy to lift my breast back up due to negligence of the Department of Corrections.

Doc. 43 at 18. On May 30, 2023, FSP returned the formal grievance without action, stating in its response:

> Your request for Administrative Remedy or Appeal has been received, reviewed, and evaluated. Your request for administrative remedy is in non-compliance with Chapter 33-103.014(1)(a) Inmate Grievance Procedure, which states: Each grievance must address only one issue or complaint. Your current request for administrative remedy addresses more than one issue and/or complaint.
>
> Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.
>
> Based on the foregoing information, your grievance is returned without action.

Doc. 43 at 19. On May 31, 2023, McDaniels submitted a grievance appeal

(#23-6-18324) in which she stated in pertinent part:

> My first grievance was approved log #(205-2305-0263) but my administrative [r]emedy still hasn't been meet [sic]. I'm denied medical & mental [h]ealth treatment which isn't in compliance with DOC procedures and violateds [sic] my amendment right as well as civil rights and constitutional rights.

> Statement of Facts
> On 3/31/23 I was removed from my cell & force [sic] to endure cruel and unuaslly [sic] punishment. I was taken to confinement & stripped of all my female undergarments. I'm an approved Gender Dyshoria [sic] inmate and have passes and the staff was aware of this at the time of the incident which is on hand held camera as well as dorm cameras. I [am] currently taking prescribed medicine for breast growth. Per procedure 403.012(5)A4 Issue opposite gender inmate uniform and undergarments. Inmates will be issued the approved type, but may purchase other types of undergarments independently from either the alternate canteen or quaterly [sic] menu. Which I'm not offered the chance.

> Problem Occurring:
> Not have my approved garment which surport [sic] my breast which is affecting my growth and development of my breast tissue. I explained this to the Institution and my first grievance was approved second one was returned but this is all one issue.

> Administrative Remedy Seeking:
> To have my proper undergarments issued and seeking compensation and to be seen by medical to examine the damages it been months with a bra & this isn't the first time this has happened. Please help me as a [t]ransgender [i]nmate it causing stress

30

> and disfigured of my breast. Bra size: 32B Panties: 7/8

Doc. 43 at 20. On June 15, 2023, the Office of the FDOC Secretary returned

the grievance appeal without action, stating in pertinent part:

> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule.
>
> Your request for administrative appeal is being returned without action.

Doc. 43 at 21.

### e. Informal Grievance (log #205-2306-0080), Formal Grievance (log #2306-205-106) and Grievance Appeal (log #23-6-20993)

McDaniels submitted an informal grievance (log #205-2306-0080),

which FSP received on June 5, 2023, in which she stated:

> I'm an ADA inmate as well as Transgender and under the care of gender dyshoria [sic].
>
> Statement of Facts:
> I was placed on A/C confinement on strip of my panties and bras in accordance with procedure 403.012(5)(a)4. Issue opposite gender inmate uniform and undergarments. Inmates will be issued the approved type but may purchase other type of under garment independently from either the alternate canteen or quaterly [sic] menu. Which I'm not allowed.
>
> Administrative Remedy Seeking:
> I've been with[out] my female undergarment since 3/31/23. I need my bras to support my breast which

> are affecting my growth & development of my breast
> tissue. I seek to have these item giving [sic] to me
> after recieving [sic] this grievance from your supply
> for all your gender dyshoria [sic] inmates. Bra size:
> 32B panties: 7/8.

Doc. 43 at 3. On June 8, 2023, FSP approved the informal grievance, stating

in its response: "Laundry has been advised to issue new undergarments." Id.

On June 12, 2023, McDaniels submitted a formal grievance (log #2306-

205-106) in which she stated:

> This is my second attempt to resolve this matter at
> hand there's a clear violation of my inmate right and
> as well a DOC policy per 403.012(5)(a). Due to not
> being issued [b]ras and panties after the Instition
> [sic] placed me on strip & took them from me. Then
> never re-issued them. [T]his is an ongoing promblem
> [sic] since 3/31/23 up until the writting [sic] of this
> grievance. My approved informal [g]rievance (6/8/23)
> advised it was approved & the response hasn't been
> meet [sic] on grievance log #205-2306-0080 or I wrote
> the same exact issue. It was approved on 5/12/23 and
> approved by the same classification officer log #205-
> 2305-0263 "New undergarments will be issued." After
> request them be issued with 30 days of responds [sic]
> still nothing at all not grieving log #205-2305-0263
> Just show you an example of me trying to resolve the
> issue multiple times. This is an appeal to the decision
> on log #205-2306-0080 which is attached as well. I
> have been approved for ADA due to my mental state
> and think due to Gender Dyshoria [sic] per form DC4-
> 691 and form DC4-643 which is in your records. I'm
> approved from Tallahassee to have the items [I]'m
> being deprived of them.
>
> Administrative Remedy seeking:
> To be issued my proper undergarment that the
> program is funded to supply me as an approved

> gender Dyshoria [sic] inmate per (DC4-643) and
> (DC4-691) and to have them [i]ssued within 30 days
> of receiving this compliant [sic]. To: fix whatever
> damages may have been occord [sic] due to the
> negliegences [sic] of the institution[.] Seek relief as
> soon as possible please it's cause[d] mental
> depression suicidal thoughts anxiety and affecting
> my breast development & growth.

Doc. 43 at 11. On June 22, 2023, FSP approved the formal grievance,

responding:

> Your request for Administrative Remedy or Appeal
> has been received, reviewed and evaluated. Further
> investigation reveals the following information:
> Laundry Staff was contacted and advised you
> received requested undergarments.
>
> Therefore, based on the foregoing information: your
> grievance is approved.

Doc. 43 at 12.

On June 20, 2023, McDaniels submitted a grievance appeal (log #23-6-

20993) to the Office of the FDOC Secretary:

> This is the fourth attempt to resolve this matter at
> hand. There's a clear violation of my inmate rights as
> well as a DOC policy per (403.012(5)(a) [d]ue to not
> being issued [b]ras and panties after the Institution
> placed me on strip and took them from me. The[y]
> never re-issued them. This is an ongoing problem
> [sic] since (3/31/23) up until the writting [sic] of this
> grievance. My approved informal Grievance advised
> it was Approved and the response hasn't been meet
> [sic] on grievance on (6/8/23) log #205-2306-0080 then
> I wrote the same exact issues 30 days later. It was
> also approved on (5/12/23) also approved by the same
> classification offer log #205-2305-0263 "New

33

undergarments will be issued" After requesting them to be issued with 30 days of the responds [sic]. Still the Institution failed to met [sic] my Administrative remedy I asked for on my formal grievance to the Institution. It is listed every level of steps I've took [sic] now I appealing the decision of log #2306-205-106 (states) "laudry [sic] staff was contacted and advised I recieved [sic] the requested undergarments.["] However I advised the Sgt or officer that delieverd [sic] the bra's and panties that the size's was incorrect the [b]ra's that where [sic] issued is a size 36 [b]ra's and panties a size 6. Which the panties are too small & bra 2 sizes too big which isn't serviceable undergarments. This other log # listed is example as steps taken to exhaust my remedy's. I'm grieving DR log #2306-205-106. I'm approved ADA due to my mental state and being Gender Dyshoria [sic] per DC4-691 and DC4-643 which is in your records. [L]audry [sic] staff advised "This is all we . . . have take it or leave it[."]

Administrative Remedy Seeking:
To be issued serviceable pairs of undergarment in which you've agreeded [sic] to and that will provide surport [sic] [t]o fix this promblem [sic] with 30 days of compliant [sic]. To fix whatever damages may have occord [sic] due to the negliengences [sic] of the institution seeking relief for damages cause the affect of my breast tissue developing & growth as well as the mental depression, suidicial [sic] thoughts, anxiety and trigger by the Gender Dyshoria [sic] due to the Institution negligence.

Doc. 43 at 13. On July 11, 2023, the FDOC Secretary returned the grievance

appeal without action, stating in the response:

Your administrative appeal has been reviewed and evaluated. A review of your formal grievance indicates that it was approved on 06/22/2023. If you do not agree with the action taken as a result by the

institution, you should re-submit your complaint indicating same, and initiating it at the appropriate level.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your appeal is returned without action.

Doc. 43 at 14.

### f. Informal Grievance (log #205-2306-0642)

On June 22, 2023, McDaniels submitted an informal grievance (log #205-2306-0642) to FSP:

I'm an approved inmate for ADA & gender Dyshoria [sic] the "issue" is I wrote numerous informal grievances which where [sic] approved (about not having female undergarments. On 06-16-23 I was issued (2) bras and (2) pair of panties. I advised per both grievances my sizes to be issued 32B (Bra) Panties are fine. The size the institution issued me was an 36 its to[o] big and don't offer surport [sic]. Can I please have serviceable undergarment to accommodate my breast develop[e]ment [sic] and growth[?]

Administrative Remedy Seek:
To have them collect the (2) Bra that are a size 36 and to issue me a size 32 which is my back measurements to provide surport. (Bra: 32B)

Doc. 43 at 15. On June 29, 2023, FSP approved the informal grievance, stating in its response: "I will advise Ms. Harvey to get you a smaller BRA." Id.

**g. Informal Grievance (log #205-2309-0508)**

The final grievance attached to the Response is an informal grievance (log #205-2309-0508) that McDaniels submitted to FSP on September 19, 2023, the same date that she gave her Complaint to prison officials for filing. In this informal grievance, McDaniels stated:

> I'm an inmate diagnosed with Gender Dysphoria and I have passes for the accommodations. However for the last 8 months I've been battling with [c]lassification, medical, [m]ental health as well as laudry [sic] staff to receive [sic] the <u>Proper</u> undergarments. The bras the institution is issuing me is 5 sizes too big. I'm a size 32 Bra. I wrote this in all my grievances however the institution is giving me a size 36 this isn't helping me with surport [sic] of my breast & is affecting my growth & development of my breast per procedure 403.012. The institution is responsible for providing the proper undergarments for all transgender (Gender Dysphoria clients).
>
> Administrative Remedy:
> For [c]lassification & laundry, medical and mental health staff to be on one accord with issuing the proper sizes to transgender inmates. To have the two bra[s] collected and issued a size 32 to properly fit my back because it way too big.

On September 28, 2023, FSP denied the informal grievance, stating in its response:

> You were issue[d] size 34 last week. There are no size
> 32 available at this time. I believe the 34 should be
> appropriate. If not you can let me know.

Doc. 43 at 16. The parties did not submit any other grievances concerning the claims at issue in this lawsuit.[11]

### 5. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motions and Response and accept as true McDaniels' allegations. <u>See</u> <u>Whatley</u>, 802 F.3d at 1209. If McDaniels' allegations show a failure to exhaust, then dismissal would be appropriate. <u>Id.</u> McDaniels alleges that she exhausted her administrative remedies by filing a series of informal grievances, formal grievances, and grievance appeals during the time period at issue. <u>See</u> Response at 3-4; <u>see</u> <u>also</u> Doc. 43 at 1. McDaniels also asserts that FSP failed to timely respond to some of her grievances in an effort to prevent McDaniels from properly exhausting her administrative remedies. <u>See</u> Response at 3-4. Accepting McDaniels' view of the facts as true, the Court cannot dismiss her claims at the first step of the <u>Turner</u> analysis.

---

[11] The FSP Officers attached other grievances with their Motion, <u>see</u> Doc. 32-3 at 1-6, but McDaniels submitted those grievances after she filed this lawsuit. As such, those grievances do not satisfy the exhaustion requirement. <u>See</u> <u>Bryant</u>, 530 F.3d at 1372 ("[T]he PLRA requires inmates to exhaust available administrative remedies before filing a lawsuit."). Not only that, those grievances concern access to a tablet, which is not an issue raised in this lawsuit.

### 6. <u>Turner</u> Step Two

As dismissal would not be appropriate based on McDaniels' allegations in the Response, the Court next turns to the second prong of the <u>Turner</u> analysis.

### a. Eighth Amendment Claims

Upon review of the record evidence, the Court determines that McDaniels failed to properly exhaust her administrative remedies as to all but one of her Eighth Amendment claims.

McDaniels' Eighth Amendment claims based on the denial of hormone therapy and psychotherapy are unexhausted because McDaniels failed to complete the FDOC's three-step sequential grievance process as to these claims. <u>See</u> <u>Dimanche</u>, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step sequential process for inmate grievances that includes an informal grievance, formal grievance, and appeal). McDaniels submitted a formal grievance (#2307-205-067) regarding the denial of hormone therapy, but did not pursue a grievance appeal after FSP denied the formal grievance. <u>See</u> Doc. 31-3 at 2. Likewise, McDaniels submitted an informal grievance (#205-2306-0113) and a formal grievance (#2306-205-111) regarding the denial of psychotherapy, but she did not pursue a grievance appeal after the informal

and formal grievances were denied.[12] See Doc. 31-3 at 3-5. Thus, because McDaniels did not complete the FDOC's sequential grievance process, the Court concludes that she failed to exhaust her administrative remedies as to her claims based upon the denial of hormone therapy and psychotherapy. See Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005)). As such, McDaniels' Eighth Amendment claims based on the denial of hormone therapy and psychotherapy are due to be dismissed.

Likewise, McDaniels' Eighth Amendment claims concerning her placement on property restriction and the ensuing conditions of disciplinary confinement are unexhausted. The record evidence does not establish that

---

[12] Although McDaniels submitted three grievance appeals during the time period at issue, see Doc. 32-1, she failed to mention the denial of hormone therapy or psychotherapy in any of them. In grievance appeals #23-6-18324 and #23-6-20993, McDaniels alleged that FSP staff failed to issue her feminine undergarments. See Doc. 43 at 13, 20. And in grievance appeal #23-6-22411, McDaniels alleged that FSP staff failed to return her personal property to her after she completed disciplinary confinement. See Doc. 31-5 at 2.

Although McDaniels stated in grievance appeal #23-6-18324 that she was being "denied medical [and] mental [h]ealth treatment," she did not specify what treatment she was being denied. Rather, the only factual assertions she made in that appeal concerned FSP's alleged failure to issue her feminine undergarments. See Doc. 43 at 20. As such, that grievance appeal failed to alert the Office of the FDOC Secretary to McDaniels' allegations concerning the denial of hormone therapy and psychotherapy. See Chandler, 379 F.3d at 1287 (noting that the purpose of administrative exhaustion "'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'") (citation omitted).

McDaniels ever submitted an informal grievance alleging that she was wrongfully placed on property restriction on March 31, 2023. Nor is there any indication that McDaniels filed any grievances regarding the conditions of her disciplinary confinement cell—i.e., "the lack of hygienic items, and other personal property such as toilet paper, soap, toothbrush, toothpaste, sheets, blankets, mattress, and pillow," see Complaint at 6. Accordingly, McDaniels' Eighth Amendment claims concerning the March 31, 2023 placement on property restriction and the ensuing conditions of her disciplinary confinement are due to be dismissed for failure to exhaust.

Turning to McDaniels' claim that Defendants Beighley and Bayron violated her Eighth Amendment right to be free from cruel and unusual punishment when they denied her feminine undergarments, the Court finds that McDaniels has satisfied her exhaustion obligation. See Complaint at 7. As detailed in this Order, McDaniels submitted several grievances concerning this issue. Notably, her informal grievances (#205-2305-0263 and #205-2306-0080) and formal grievance (#2306-205-106) concerning the denial of feminine undergarments were all approved. See Doc. 43 at 3, 11, 17. Although the FDOC's sequential grievance process concludes with the inmate's submission of a grievance appeal, an inmate need not proceed to the appeal step if he or she received an approved informal or formal grievance. See, e.g., Dombrowski v. Wilson, No. 3:21-cv-1199-BJD-PDB, 2023 WL

2403857, at *3 (M.D. Fla. Mar. 8, 2023) (finding that the plaintiff exhausted his administrative remedies because his informal grievances were approved).

In accordance with the foregoing, McDaniels' Eighth Amendment claims based on (1) the denial of hormone therapy, (2) the denial of psychotherapy, (3) placement on property restriction, and (4) the conditions of disciplinary confinement are dismissed without prejudice. However, her claim based on the denial of feminine undergarments is properly exhausted and may proceed.

### b. ADA, RA, and Fourteenth Amendment Claims

The Court finds that McDaniels failed to exhaust her administrative remedies with regard to her ADA claims against Defendants Beighley, Bayron, Dixon, and McClellan. See Complaint at 10. Although McDaniels mentioned that she was an "ADA inmate" in several grievances, merely labeling herself as such was insufficient to put prison officials on notice of her ADA claims. See Chandler, 379 F.3d at 1287. And while McDaniels submitted a formal grievance (log #2306-205-111) in which she noted she had approved ADA accommodations and requested "all [of her] approved accommodations" for gender dysphoria, see Doc. 31-3 at 4, McDaniels did not pursue a grievance appeal after FSP denied that formal grievance. Likewise, McDaniels did not pursue a grievance appeal of the denial of her formal grievance (log #2307-205-067) requesting hormone therapy in part because

she was "an approved ADA member." <u>See</u> Doc. 31-3 at 2. Accordingly, because McDaniels failed to complete the FDOC's three-step sequential grievance process for her ADA claims, the Court finds that her ADA claims are due to be dismissed for failure to exhaust.

In her Complaint, McDaniels summarily asserts Fourteenth Amendment equal protection and RA claims. <u>See</u> Complaint at 1. The Court finds these claims are also unexhausted. Although unexhausted claims are usually dismissed without prejudice, the Court will dismiss the ADA, RA, and Fourteenth Amendment claims with prejudice in light of the other arguments raised in Defendants' Motions.

## B. Analysis of the Merits of McDaniels' Claims

### 1. Eighth Amendment Claim

As to McDaniels' exhausted Eighth Amendment claim against Defendants Beighley and Bayron based upon the denial of feminine undergarments, the Court will consider the remaining arguments raised in the FSP Officers' Motion in favor of dismissal. The FSP Officers argue that the Complaint is subject to dismissal because it is a shotgun pleading. <u>See</u> FSP Officers' Motion at 11-15. The FSP Officers also argue that they are entitled to qualified immunity because the Complaint is a shotgun pleading. <u>Id.</u> at 15.

The Federal Rules of Civil Procedure (Rule(s)) require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). "'A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.'" Evans v. McClain of Ga., Inc., 131 F.3d 957, 964 n.2 (11th Cir. 1997) (citation omitted). Despite Rule 8(a)'s liberal pleading requirement, "a complaint must still contain either direct or inferential allegations respecting all material elements of a cause of action." Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) (emphasis omitted). Additionally, a complaint may not run afoul of the Eleventh Circuit's prohibition against shotgun pleadings. See generally Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015). In Weiland, the Eleventh Circuit "identified four rough types or categories of shotgun pleadings." See Barmapov v. Amuial, 986 F.3d 1321, 1324-25 (11th Cir. 2021) (quoting Weiland, 792 F.3d at 1321). As the Barmapov court explained,

> The first [category] is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." The third is a complaint that does not separate "each

> cause of action or claim for relief" into a different count. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

Barmapov, 986 F.3d at 1324-25 (quoting Weiland, 792 F.3d at 1321-23). Here, the FSP Officers contend that McDaniels raises "generic, conclusory allegations against the Defendants, often commingling them" and that it is difficult to determine which Defendants are responsible for each constitutional violation. See FSP Officers' Motion at 14. But, at least with respect to the exhausted Eighth Amendment claim, McDaniels identifies Defendants Beighley and Bayron as the individuals who denied her request for feminine undergarments on March 31, 2023. See Complaint at 5, 7. This is sufficient to satisfy Rule 8 and does not constitute a shotgun pleading. Thus, McDaniels' Eighth Amendment claim against Defendants Beighley and Bayron may proceed. To the extent these Defendants seek dismissal on the basis of qualified immunity, their motion is due to be denied without prejudice to raising the argument in a properly supported motion for summary judgment.

## 2. ADA and RA Claims

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998) (holding Title II of the ADA "unambiguously extends to state prison inmates"). "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). Similarly, section 504 of the RA provides, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000)); J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together."). To state a claim of discrimination under the ADA and RA, a plaintiff must allege "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied

the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (quoting Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007)).

In her Complaint, McDaniels asserts that she qualifies as a disabled individual under the ADA. See Complaint at 9. She alleges Defendants Beighley, Bayron, Dixon, and McClellan violated her rights under the ADA when they denied "her prescribed medical treatments, . . . which included being issued her female undergarments, as well as hormone therapy and other . . . mental health treatments." Id. at 10. McDaniels also asserts a cursory RA claim against Defendants. Id. at 1.

Because only public entities may be liable under the ADA and RA, McDaniels fails to state an ADA claim against Defendants Beighley, Bayron, and McClellan in their individual capacities.[13] Likewise, she fails to state a RA claim to the extent she asserts an RA claim against the FSP Officers and

---

[13] In her Complaint, McDaniels identified Defendants Beighley, Bayron, Dixon, and McClellan as the Defendants against whom she asserted her ADA claims. See Complaint at 10.

Defendant McClellan in their individual capacities.[14] <u>See, e.g.</u>, <u>Owens</u>, 602 F. App'x at 477, 478; <u>Badillo</u>, 158 F. App'x at 211 ("[T]here is no individual capacity liability under Title II of the ADA or RA.").

McDaniels also fails to sufficiently allege an ADA or RA claim against Defendants Dixon and McClellan in their official capacities. Insofar as McDaniels premises her ADA and RA claims on the alleged refusal to provide her with hormone therapy and psychotherapy, her claims fail because the ADA and RA were not intended to subsume medical malpractice claims, meaning allegations that a defendant failed to provide medical care to a disabled inmate do not give rise to claims under the ADA or RA. <u>See</u> <u>Jones v. Rutherford</u>, 546 F. App'x 808, 811-12 (11th Cir. 2013); <u>Finn v. Haddock</u>, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating that "failure to provide adequate medical treatment . . . does not violate the ADA or [RA]" (citations omitted)). To the extent McDaniels premises her ADA and RA claims on an alleged failure to accommodate her disability by denying her feminine undergarments, she fails to allege that Defendants Dixon and McClellan acted with discriminatory animus—i.e., that "the exclusion, denial of benefit, or discrimination was by reason of [her] disability." <u>Owens</u>, 602 F. App'x at

---

[14] McDaniels did not specify in her Complaint whether she brings her RA claim against some or all Defendants. <u>See</u> Complaint at 1.

477. Thus, McDaniels' unexhausted ADA and RA claims are due to be dismissed with prejudice.

### 3. Fourteenth Amendment Claim

The Court will conduct an independent frivolity review of McDaniels' Fourteenth Amendment claim. <u>See</u> Complaint at 1. The PLRA requires the Court to dismiss a claim at any time if the Court determines that it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A. In making this determination, the Court must read a plaintiff's pro se allegations in a liberal fashion. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). "A claim is frivolous if it is without arguable merit either in law or fact." <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing <u>Battle v. Central State Hosp.</u>, 898 F.2d 126, 129 (11th Cir. 1990)). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" <u>Bilal</u>, 251 F.3d at 1349 (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 328 (1989)). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. <u>Id.</u>

The Equal Protection Clause of the Fourteenth Amendment provides that no State may "deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. It requires that States

treat all similarly situated persons alike. <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). Generally, to establish a claim cognizable under the Equal Protection Clause, a prisoner must demonstrate that "(1) he is similarly situated to other prisoners who received more favorable treatment[,] and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." <u>Sweet v. Sec'y, Dep't of Corr.</u>, 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citing <u>Jones v. Ray</u>, 279 F.3d 944, 946-47 (11th Cir. 2001); <u>Damiano v. Fla. Parole and Prob. Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986)).

Here, McDaniels makes a single conclusory assertion in her Complaint, alleging that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. <u>See</u> Complaint at 1. Relying on conclusions alone to attempt to plead elements of a Fourteenth Amendment equal protection claim will not suffice. In view of the absence of supporting facts, the Court concludes that McDaniels has failed to state a plausible claim for a violation of her equal protection rights. As such, her unexhausted Fourteenth Amendment claim is due to be dismissed with prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1.      Plaintiff Michael J. McDaniels' Motion to Impeach Witness (Doc. 41) is **DENIED**.

2.      Defendants Dixon and McClellan's Motion to Dismiss (Doc. 31) is **GRANTED** to the extent that McDaniels' claims against Dixon and McClellan under the Eighth Amendment are **dismissed without prejudice** and McDaniels' claims against Dixon and McClellan under the ADA, RA, and the Fourteenth Amendment are **dismissed with prejudice**. The **Clerk** shall terminate Dixon and McClellan as Defendants in this case.

3.      Defendants Beighley, Bayron, Jenkins, and Howard's Motion to Dismiss (Doc. 32) is **GRANTED** to the extent that McDaniels' claims against Defendants Jenkins and Howard are **dismissed without prejudice**; McDaniels' claims against Defendants Beighley and Bayron under the ADA, RA, and Fourteenth Amendment are **dismissed with prejudice**; and McDaniels' Eighth Amendment claims against Defendants Beighley and Bayron based on (1) the denial of hormone therapy, (2) the denial of psychotherapy, (3) placement on property restriction, and (4) the conditions of disciplinary confinement are **dismissed without prejudice**. The **Clerk** shall terminate Jenkins and Howard as Defendants in this case.

3.      This case will proceed on McDaniels' Eighth Amendment claim against Defendants Beighley and Bayron for denial of feminine undergarments. Defendants Beighley and Bayron shall file an answer to the Complaint by **September 16, 2024**. After the answer is filed, the Court will set further deadlines by separate order.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of August, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10 08/13
c:      Michael J. McDaniels, #T43936
        Counsel of record

51